UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYRONE G. BARNEY,                    )
  3404 Viceroy Court               )
  Edgewater, MD 21037,             )
                                )
    Plaintiff,                     )
                               )     Civ. Action No.
       v.                          )
                               )
HENRY M. PAULSON, JR.,                )
  Secretary Of The Treasury        )
  1500 Pennsylvania Ave., N.W.,     )
  Washington, D.C. 22020,          )
                               )
    Defendant.                     )
_____      )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.) This is an action by Tyrone G. Barney, one of the most highly regarded senior executives in the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS") and a member of the Senior Executive Service ("SES"). Mr. Barney is an African American male who engaged in protected EEO activity. The subject matter of this suit is defendant's discrimination and retaliation toward Mr. Barney which, among other matters, caused defendant to remove Mr. Barney from management; propose to suspend Mr. Barney for 30 days; and to reassign Mr. Barney involuntarily to a highly undesirable non-supervisory, temporary position.

2.) Mr. Barney's exceptional career with IRS CID has spanned 32 years and included some of the most prestigious assignments in the organization, including Director of Field Operations for CID's Mid-Atlantic Region.

3.) The upward progression of Mr. Barney's career was brought to a halt in the fall of 2006, when then CID Chief Nancy Jardini discriminated and retaliated against Mr. Barney on account of his race; for his role as the management representative in resolving a sensitive administrative EEOC complaint in the complainant's favor; and for filing his own complaint over not being selected as Ms. Jardini's Deputy.

4.) Ms. Jardini took the first of her highly adverse actions toward Mr. Barney on October 24, 2006, when she issued a notice proposing to suspend Mr. Barney for 30 days without pay.

5.) Simultaneously, Ms. Jardini removed Mr. Barney from CID senior management, and reassigned him involuntarily to an unclassified, temporary, and previously non-existent position as a Project Leader.

6.) Mr. Barney appealed Ms. Jardini's proposal to suspend him on all grounds on which it was allegedly based including, but not limited to, by demonstrating that it was unsupported by the facts and that it was the product of discrimination and retaliation.

7.) On April 4, 2007, the process of appealing Ms. Jardini's proposed suspension concluded when the agency remitted her proposed adverse action to a reprimand.

8.) Despite the outcome of that process, Mr. Barney remained stripped of managerial responsibilities and assigned to a position lacking duties commensurate with his background and accomplishments, and without professional exposure inside or outside of IRS CID.

9.) As a result of having lost his position in senior CID management, on February 9, 2008, Mr. Barney was reassigned involuntarily to the CID field office in Boston, Massachusetts, to a position as a Special Agent in Charge ("SAIC"). Unless he reported to that position no later than January 4, 2008, Mr. Barney was subject to removal from the federal government. Only by agreeing to retire from the federal service effective January 3, 2009, was Mr. Barney able to serve in the position temporarily without leaving the Washington, D.C. area.

10.) This case seeks redress for defendant's discrimination and retaliation toward Mr. Barney, in removing him as Director of Field Operations for the IRS CID Mid-Atlantic Region and from senior CID management; proposing to suspend Mr. Barney without pay for 30 days; reprimanding Mr. Barney; reassigning him involuntarily to a non-supervisory, materially less desirable position; and issuing him a Performance Appraisal for Fiscal Year 2006 at the Minimally Successful level. The case arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and seeks: a.) declaratory, injunctive, and other equitable relief; b.) Mr. Barney's reinstatement in senior IRS CID management; c.) compensatory damages; and d.) an award of the attorneys' fees and costs incurred in the prosecution of this action and the administrative processes which preceded it.

<u>**Parties, Jurisdiction, And Venue**</u>

11.) Plaintiff Tyrone G. Barney was, until the actions that comprise the subject matter of this Complaint, a member of senior management of the Criminal Investigation Division of the Internal Revenue Service.  Mr. Barney is an African American male who participated in the administrative EEO complaints process on his own behalf and as a management representative in the resolution of a CID employee's administrative complaint before the actions which underlie this suit.  Mr. Barney resides at the address recited in the caption of this Complaint.

12.) Defendant Henry M. Paulson, Jr., is the Secretary of the Treasury, the Cabinet official who heads the Department of the Treasury, and is sued in his official capacity only.  The Internal Revenue Service is a bureau of the Department of the Treasury, and is responsible for administering the Internal Revenue Code and federal tax laws and regulations and for collecting federal taxes.  The Criminal Investigation Division is a part of the IRS and investigates potential criminal violations of the Internal Revenue Code and federal tax laws.

13.) Jurisdiction of this Court is based upon 28 U.S.C. §1332, and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)).  Venue lies here pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant took the unlawful employment actions that are at issue in this suit in this judicial district.

### Statement of Facts

### Background

14.) Tyrone G. Barney is an African American male who is a member of the Senior Executive Service ("SES"), and who engaged in protected EEO activities before the adverse employment actions and materially adverse actions that are contested in this Complaint.

15.) Until the actions that gave rise to this Complaint, Mr. Barney was a member of senior management of the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS"). CID is a component of the IRS and investigates potential criminal violations of the Internal Revenue Code and federal tax laws and regulations.

16.) Mr. Barney's last assignment as a member of senior management in CID was as Director of Field Operations for CID's Mid-Atlantic Region. In that position, Mr. Barney headed all of CID's investigative and related activities in its Mid-Atlantic Region, which covered Illinois, Michigan, Ohio, Maryland, Delaware, and Virginia. Mr. Barney also served as the principal advisor to the Chief of Criminal Investigation for all matters within the Mid-Atlantic Region.

17.) Mr. Barney joined the IRS in 1975, starting as a Student Trainee in the IRS Intelligence Division and graduating to becoming a Special Agent in CID in August 1976.

18.) Mr. Barney was selected for his first position in management in CID in 1985, as a front line supervisor; and held managerial positions of increasing responsibility since that time, as a Branch Chief in 1990; and Division Chief (or Special Agent In Charge) in 1992.

19.) In 1997, Mr. Barney was selected as a member of the SES, when he was chosen to serve as the second National Director of Tax Refund Fraud. In 2000, Mr. Barney was named first Director of Strategy for the modernized CID, where he became responsible for developing, planning, and monitoring the organization's strategic priorities, as well as its hiring, training, and deployment of special agent resources.

20.) In 2002, Mr. Barney was selected as the CID Director of Field Operations for the Mid-Atlantic Region, the duties of which were described earlier in paragraph 16.

21.) Throughout his tenure with the IRS, Mr. Barney's career has been highlighted with distinguished ratings, substantial salary increases, and performance bonuses.

### Mr. Barney's Non-Selection as Deputy Chief of CID and Initial Protected Activity

22.) In March 2006, the position of Deputy Chief of CID opened for competition. Mr. Barney timely applied; competed for the position; but was not selected in favor of John Imhoff, a Caucasian male.

23.) The Chief of CID and the selecting official for the Deputy Chief position was Nancy Jardini, the official who would subsequently take the adverse employment actions and materially adverse actions that are the subjects of this suit. Ms. Jardini took all of these actions while assigned to and stationed in CID Headquarters in Washington, D.C.

24.) Mr. Barney timely initiated the informal discrimination complaints process over his non-selection; later filed a formal

administrative complaint; and subsequently amended that complaint on a number of occasions.[1]

**Mr. Barney's Role in the Resolution of the Peebles' EEO Complaint**

25.) In the spring of 2006, Sarah Peebles, a CID Special Agent assigned to the agency's field office in Chicago, Illinois, initiated the administrative discrimination complaints process. Ms. Peebles alleged that she had been subject to a hostile work environment and a number of unlawful employment actions on account of her race (African American).

26.) Among other matters, Ms. Peebles charged that management in the Chicago Field Office treated her disparately; had not given her training comparable to her Caucasian counterparts; improperly caused the Treasury Inspector General for Tax Administration ("TIGTA") to open an investigation when she misplaced the password to her computer; and had made a number of derogatory statements that were either explicitly or implicitly racially demeaning.

27.) Mr. Barney was initially asked to become involved in the Peebles' discrimination complaint in March of 2006, when he was contacted by CID EEO Specialist assigned to the complaint and briefed on it. Mr. Barney responded immediately and ensured that CID complied with its EEO obligations.

---

[1]     This use by Mr. Barney of the administrative EEO complaints process over his non-selection was one of the factors that motivated defendant to take the retaliatory actions as issue here. The non-selection itself is not a part of this case; the other actions identified in Mr. Barney's amendments to his original administrative complaint remain part of it.

28.) After initially learning about Ms. Peebles' complaint, Mr. Barney directed the CID EEO Specialist to learn more about it and brief him on it more thoroughly. He also instructed the Special Agent in Charge of the Chicago Field Office, the Assistant Special Agent in Charge, and the Supervisory Special Agent of that office to meet with him at an upcoming National Managers' Meeting in Baltimore, Maryland, and provide Mr. Barney with all relevant employment records and their account of the matter. Mr. Barney also instructed the Director of CID's EEO and Diversity Office, the responsible EEO Specialist, and Mr. Barney's Staff Analyst to attend that meeting.

29.) As a result of that meeting, Mr. Barney concluded that the actions taken against Ms. Peebles were disproportionate and based on her race. Mr. Barney was particularly struck by the fact that the Supervisory Special Agent for the Fairview Heights Post of Duty in the Chicago Field Office had used a friend in TIGTA to initiate and conduct an investigation of Ms. Peebles over a non-disciplinary, administrative matter. Mr. Barney was aware that it is not uncommon for IRS employees to misplace passwords; and that contacting TIGTA, the special IRS unit responsible for investigating serious allegations of employee misconduct, was disproportionate, inappropriate, and disparate.

30.) Seeking to resolve Ms. Peebles' complaint, Mr. Barney arranged for it to be placed in the CID mediation program.

31.) In May of 2006, before mediation could take place, Mr. Barney was again contacted by the EEO specialist assigned to the Peebles' complaint. The specialist advised Mr. Barney that the

relationship between Ms. Peebles and her management had deteriorated and was continuing to degrade; that Ms. Peebles had filed a formal complaint of discrimination; that she was no longer interested in pursuing mediation; and that she wanted to be reassigned.

32.) The EEO specialist also advised Mr. Barney that based upon her extensive experience with similar complaints and her understanding of the matter, Ms. Peebles had a strong case; and that, if she did proceed, Ms. Peebles could prevail and subject the IRS to a substantial monetary liability.

33.) Based on this advice, his own independent knowledge, and his extensive experience with IRS CID, Mr. Barney concluded that Ms. Peebles had been subject to disparate treatment in a variety of ways, including over the misplacement of her passwords, in the negative feedback by CID management over her alleged non-performance, by CID management's implicitly and explicitly racially demeaning commentary, and by its failure to provide Ms. Peebles with suitable assignments.

34.) With CID's employment relationship with Ms. Peebles degrading, Mr. Barney arranged for a resolution of Ms. Peebles' complaint, the most significant aspects of which included reassigning Ms. Peebles to new management, purging her personnel files of negative records, paying a small sum for relocation expenses, and requiring that the Chicago managers involved in the activities that discriminatory to participate in diversity training.

35.) Serving as the CID management representative and agreeing to the resolution of Ms. Peebles' complaint were within the scope of Mr. Barney's authority.

36.) On May 19, 2006, Mr. Barney executed the agreement with Ms. Peebles after conferring with the CID EEO Director and briefing the Deputy Chief of CID.

### Ms. Jardini's Response, Her Proposal to Suspend Mr. Barney, His Removal from CID Management, and Related Actions

37.) The members of Chicago management who were required to take training pursuant to the Peebles' settlement agreement responded by filing a grievance and an EEO complaint of their own against Mr. Barney.

38.) Upon learning of these managers' reactions, Ms. Jardini voided the agreement that had been executed by Mr. Barney and Ms. Peebles and put a "superseding" agreement in place, one without diversity training for Chicago management.

39.) On August 2, 2006, Ms. Jardini removed the Chicago Field Office from Mr. Barney's supervision.

40.) On October 24, 2006, Ms. Jardini removed Mr. Barney from CID senior management, and reassigned him involuntarily to a materially less desirable and unclassified, temporary, and previously non-existent, non-supervisory position as a Project Leader in Lanham, Maryland.

41.) Simultaneously, Ms. Jardini issued a Notice of Proposed Suspension for 30 days to Mr. Barney. Mr. Jardini's proposed action was based on Mr. Barney's role in the Peebles EEO complaint, his own protected use of the administrative discrimination complaints process, and his race.

42.) Mr. Barney utilized the administrative reply process to contest Ms. Jardini's proposed suspension, submitting a written reply and participating in an oral reply session on December 1, 2006.

43.) On April 4, 2007, the process of appealing Ms. Jardini's proposed suspension concluded when the agency remitted her proposed adverse action to a reprimand.

44.) Despite the outcome of that process, Mr. Barney remained stripped of managerial responsibilities and assigned to the Project Leader position, one lacking duties commensurate with his background and accomplishments, and without professional exposure inside or outside of IRS CID.

45.) On November 8, 2006, Mr. Barney received his Fiscal Year 2006 performance rating while in the Project Leader position, one that was at a distinctly lower level than he deserved. The reviewing official was Ms. Jardini, who had removed Mr. Barney from management and reassigned him involuntarily. The rating official was Ms. Jardini's Deputy, John Imhoff, who had been the subject of Mr. Barney's initial EEO complaint.

46.) Mr. Barney's FY 2006 rating was at the Minimally Successful level for "Leadership and Business Acumen." A rating at this level not only caused Mr. Barney, a member of the SES, to receive a lower increase in salary than he would have received at a higher level, it contributed to making continued advancement in and a career at CID no longer possible. This rating, in addition, was greatly reduced from Mr. Barney's previous ratings and due to his race, his role in

resolving the Peebles' administrative complaint, and his own use of the administrative discrimination complaints process.

47.) As a result of having lost his position in senior CID management, on February 9, 2008, Mr. Barney was reassigned involuntarily to the CID field office in Boston, Massachusetts, to a position as a Special Agent in Charge ("SAIC").

48.) Unless he reported to that position no later than January 4, 2008, Mr. Barney was subject to removal from the federal government. If he were to report to that position permanently, Mr. Barney would be required to relocate to Boston, away from his family who reside in Maryland. Instead, Mr. Barney reported to the position on a temporary basis, which allowed him to continue to reside in the Washington, D.C. area until January 3, 2009, at which point Mr. Barney's retirement from the federal service will become effective.

### Mr. Barney's Continued Use of the Administrative Discrimination Complaints Process And Exhaustion of Administrative Remedies

49.) Mr. Barney timely initiated the informal discrimination complaints process on July 20, 2006, and filed his initial formal complaint of discrimination over his non-selection on November 9, 2006. Mr. Barney timely amended that complaint to include charges that he was subject to discrimination and retaliation over all of the adverse employment actions and materially adverse actions that are the subjects of this suit.

50.) On March 14, 2008, the Department of the Treasury issued a Final Agency Decision on Mr. Barney's formal administrative complaint, as it had been amended.

51.) With the foregoing actions, Mr. Barney administratively challenged all of the employment actions that he has placed at issue in this suit on a timely basis, exhausted the administrative remedies available to him, and initiated suit within 90 days of receipt of the Final Agency Decision.

### COUNT I
### (<u>Race Discrimination</u>)

52.) Plaintiff repeats the allegations contained in paragraphs 1 through 51 above, as though fully set forth here.

53.) On or about October 24, 2006, defendant removed plaintiff from his position as the CID Director of Field Operations, removed plaintiff from CID management, and reassigned plaintiff involuntarily to materially less desirable position as a Project Leader; one that was neither permanent nor supervisory, commensurate with plaintiff's skills, background and training, or offered equivalent opportunities for professional exposure and advancement.

54.) In removing plaintiff from his position as the CID Director of Field Operations, removing plaintiff from CID management, and/or reassigning plaintiff involuntarily as a Project Leader, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID.

55.) In taking the foregoing actions, defendant subjected plaintiff to adverse employment action and discriminated against plaintiff on account of his race, which is African American.

56.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2), in taking the foregoing actions.

57.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT II
## (Retaliation)

58.) Plaintiff repeats the allegations contained in paragraphs 1 through 57 above, as though fully set forth here.

59.) On or about October 24, 2006, defendant removed plaintiff from his position as the CID Director of Field Operations, removed plaintiff from CID management, and reassigned plaintiff involuntarily to materially less desirable position as a Project Leader; one that was neither permanent nor supervisory, commensurate with plaintiff's skills, background and training, or offered equivalent opportunities for professional exposure and advancement.

60.) In removing plaintiff from his position as the CID Director of Field Operations, removing plaintiff from CID management, and/or reassigning plaintiff involuntarily as a Project Leader, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination.

61.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his protected EEO activity, in particular plaintiff's use of the administrative discrimination complaints process starting with plaintiff's complaint over his non-selection as Deputy Chief of CID; and his role in the administrative discrimination complaints process of CID agent Sarah Peebles.

62.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3), by retaliating against plaintiff in the manner described above.

63.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT III**
**(<u>Retaliation</u>)**

64.) Plaintiff repeats the allegations contained in paragraphs 1 through 63 above, as though fully set forth here.

65.) On or about October 24, 2006, defendant proposed to suspend plaintiff for 30 days without pay.

66.) In proposing to suspend plaintiff, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination.

15

67.) In taking the foregoing action, defendant retaliated against plaintiff on account of his protected EEO activity, in particular plaintiff's use of the administrative discrimination complaints process starting with plaintiff's complaint over his non-selection as Deputy Chief of CID; and his role in the administrative discrimination complaints process of CID agent Sarah Peebles.

68.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3), by retaliating against plaintiff in the manner described above.

69.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT IV
### (Race Discrimination)

70.) Plaintiff repeats the allegations contained in paragraphs 1 through 69 above, as though fully set forth here.

71.) On or about April 4, 2007, defendant issued a reprimand to plaintiff and thereby materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID.

72.) In taking the foregoing action, defendant subjected plaintiff to adverse employment action and discriminated against plaintiff on account of his race, which is African American.

16

73.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2), in taking the foregoing actions.

74.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT V
### (Retaliation)

75.) Plaintiff repeats the allegations contained in paragraphs 1 through 74 above, as though fully set forth here.

76.) On or about April 4, 2007, defendant issued a reprimand to plaintiff and thereby materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination.

77.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his protected EEO activity, in particular plaintiff's use of the administrative discrimination complaints process starting with plaintiff's complaint over his non-selection as Deputy Chief of CID; and his role in the administrative discrimination complaints process of CID agent Sarah Peebles.

78.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16

(incorporating by reference 42 U.S.C. §2000e-3), by retaliating against plaintiff in the manner described above.

79.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT VI**
**(<u>Race Discrimination</u>)**

80.) Plaintiff repeats the allegations contained in paragraphs 1 through 79 above, as though fully set forth here.

81.) On or about November 8, 2006, defendant gave Mr. Barney a performance rating for Fiscal Year 2006 at the Minimally Successful level for "Leadership and Business Acumen." This rating caused plaintiff to receive a lower increase in salary than he was entitled to receive; contributed to making plaintiff's continued advancement in and career at CID no longer possible; was greatly reduced from Mr. Barney's previous ratings and the rating he deserved; and materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID.

82.) In taking the foregoing action, defendant subjected plaintiff to adverse employment action and discriminated against plaintiff on account of his race, which is African American.

83.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2), in taking the foregoing actions.

84.) Defendant's violation of plaintiff's civil rights caused

18

him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT VII
### (Retaliation)

85.) Plaintiff repeats the allegations contained in paragraphs 1 through 84 above, as though fully set forth here.

86.) On or about November 8, 2006, defendant gave Mr. Barney a performance rating for Fiscal Year 2006 at the Minimally Successful level for "Leadership and Business Acumen." This rating caused plaintiff to receive a lower increase in salary than he was entitled to receive; contributed to making plaintiff's continued advancement in and career at CID no longer possible; was greatly reduced from Mr. Barney's previous ratings and the rating he deserved; and materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of CID, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination..

87.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his protected EEO activity, in particular plaintiff's use of the administrative discrimination complaints process starting with plaintiff's complaint over his non-selection as Deputy Chief of CID; and his role in the administrative discrimination complaints process of CID agent Sarah Peebles.

88.) Defendant violated the participation and opposition clauses of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16

(incorporating by reference 42 U.S.C. §2000e-3), by retaliating against plaintiff in the manner described above.

89.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

Wherefore, plaintiff Tyrone G. Elion respectfully requests that the Court enter judgment in his favor and award him the following relief.

A. An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations.

B. An Order reinstating plaintiff in a senior management position in IRS CID.

C. Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

D. Record correction.

E. The attorneys' fees and costs incurred by plaintiff.

G. Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.


                        Respectfully submitted,



                        _____/s/_____
                        Robert C. Seldon, Esq.
                          D.C. Bar No. 245100



                        _____/s/_____
                        Jennifer R. Amore, Esq.
                          D.C. Bar No. 975907
                        Robert C. Seldon & Associates, P.C.
                        1319 F Street, N.W.
                        Suite 200
                        Washington, D.C.  20004
                        (202) 393-8200

                        Counsel for Plaintiff

**I (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government
  Plaintiff
- 2 U.S. Government
  Defendant
- 3 Federal Question
  (U.S. Government Not a Party)
- 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### A. *Antitrust*

410 Antitrust

### B. *Personal Injury/ Malpractice*

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
368 Asbestos Product Liability

### C. *Administrative Agency Review*

151 Medicare Act

**Social Security:**
861 HIA ((1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g)
864 SSID Title XVI
865 RSI (405(g)
**Other Statutes**
891 Agricultural Acts
892 Economic Stabilization Act
893 Environmental Matters
894 Energy Allocation Act
890 Other Statutory Actions (If
   Administrative Agency is Involved)

### D. *Temporary Restraining Order/Preliminary Injunction*

**Any nature of suit from any category may be selected for this category of case assignment.**

**\*(If Antitrust, then A governs)\***

---

### E. *General Civil (Other)*     OR     F. *Pro Se General Civil*

**Real Property**
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

**Personal Property**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

**Bankruptcy**
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157

**Prisoner Petitions**
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Condition

**Property Rights**
820 Copyrights
830 Patent
840 Trademark

**Federal Tax Suits**
870 Taxes (US plaintiff or
   defendant
871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
610 Agriculture
620 Other Food &Drug
625 Drug Related Seizure
   of Property 21 USC 881
630 Liquor Laws
640 RR & Truck
650 Airline Regs
660 Occupational
   Safety/Health
690 Other

**Other Statutes**
400 State Reapportionment
430 Banks & Banking
450 Commerce/ICC
   Rates/etc.
460 Deportation

470 Racketeer Influenced &
   Corrupt Organizations
480 Consumer Credit
490 Cable/Satellite TV
810 Selective Service
850 Securities/Commodities/
   Exchange
875 Customer Challenge 12 USC
   3410
900 Appeal of fee determination
   under equal access to Justice
950 Constitutionality of State
   Statutes
890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus-General** **510 Motion/Vacate Sentence** | **442 Civil Rights-Employment** **(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)** <br><br> *(If pro se, select this deck)* | **895 Freedom of Information Act** **890 Other Statutory Actions (if Privacy Act)** <br><br> *(If pro se, select this deck)* | **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act** **720 Labor/Mgmt. Relations** **730 Labor/Mgmt. Reporting & Disclosure Act** **740 Labor Railway Act** **790 Other Labor Litigation** **791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights Act)** **443 Housing/Accommodations** **444 Welfare** **440 Other Civil Rights** **445 American w/Disabilities-Employment** **446 Americans w/Disabilities-Other** | **110 Insurance** **120 Marine** **130 Miller Act** **140 Negotiable Instrument** **150 Recovery of Overpayment & Enforcement of Judgment** **153 Recovery of Overpayment of Veteran's Benefits** **160 Stockholder's Suits** **190 Other Contracts** **195 Contract Product Liability** **196 Franchise** | **441 Civil Rights-Voting (if Voting Rights Act)** |

---

## V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> **YES**    **NO** |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | **YES**    **NO** | If yes, please complete related case form. |
|---|---|---|---|

**DATE**          **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.